(70 Hun, 520.)

BOARD OF EDUCATION, ETC., OF WATERFORD v. FIRST NAT. BANK OF RICHFIELD SPRINGS et al.

(Supreme Court, General Term, Third Department. July 8, 1893.)

1. BUILDING CONTRACTS —ABANDONMENT BY CONTRACTOR—RIGHTS OF SURETY.
   Where the surety of a contractor completes the building, pursuant to the contract, after abandonment thereof by the contractor, he is entitled to recover from the owner the amount of the contract price, less the amount paid the contractor prior to abandonment, rather than on a quantum meruit.

2. SAME—PAYMENTS ON ARCHITECT'S CERTIFICATES—ESTOPPEL.
   A building contract provided that 90 per cent. of the work done and materials furnished during the previous month should be paid for on or before the 10th day of each month, the full amount "to be ascertained by the estimate of the architect." The specifications provided that the work should be done to the satisfaction of the architect and building committee, and "any disagreement that cannot be settled by" them "shall be settled by three disinterested arbitrators." During the progress of the work the architect made "an approximate estimate" that the amount due the contractor on a certain date was $7,155.72. The building committee refused to pay more than $3,500 thereon, claiming the estimate to be excessive. This amount the contractor accepted without any submission to arbitrators, and, on a paper which purported to be the estimate, he procured of a bank the balance due thereon. *Held*, in an action between the owner and such bank, that the owner was not estopped by such estimate to deny that it owed the contractor the amount stated.

3. SAME—PERFORMANCE BY SURETY—ACTION FOR PRICE—COSTS.
   Where the owner of a building failed to declare the contract forfeited on its abandonment by the contractor, but permitted the surety to complete the building pursuant to the contract, the surety is entitled to costs in an action against the owner to recover the balance due thereon.

Appeal from special term, Saratoga county.

Action by the board of education, etc., of Waterford, against the First National Bank of Richfield Springs, John D. Henderson, (receiver of the firm and individual property of John Brown and Charles Brown,) Alexander G. Cunningham, and others. From a judgment for defendant Cunningham on the findings of the circuit

court, plaintiff and defendant bank and others appeal.   Affirmed.

The following opinion was delivered by Mr. Justice KELLOGG at circuit:

This action is brought, as appears by the complaint, to have determined to whom, among the defendants, plaintiff should pay money in its possession, and the amount to be paid to each. The apparent theory is that a certain sum of money is, by order of the court, deposited with the county treasurer, subject to distribution among the defendants by judgment of this court,— the plaintiff being only interested in properly and safely being rid of the money, and all liability to any defendant; that the defendants should litigate among themselves their rights thereto. The answer of the several defendants, and the course the litigation has taken, develop a somewhat different theory, which may also be considered consistent with plaintiff's right to maintain the action, viz.: To whom among defendants is plaintiff indebted, and in what sum or sums? Various independent claims have, by the several defendants, been made upon plaintiff, all growing out of a single transaction. One suit is pending by defendant Cunningham against plaintiff, claiming the entire sum in plaintiff's possession; another is threatened by defendant the Richfield Bank, claiming a portion of such money; and sundry proceedings supplemental to execution, in favor of other defendants, are also pending, liable to ripen into several actions, in the name of the receiver of John and Charles Brown, two other defendants, against the plaintiff. And while the sum of plaintiff's total indebtedness is conceded to be a limited sum, and its present obligation to each and all of the defendants is based on a single contract made with defendants John and Charles Brown, and not upon its separate dealings with other defendants, yet the plaintiff is in peril from these various claims, and, I think, properly brings into court, in one suit, all these defendants, and is entitled to judgment here determining all questions raised. Objection is made by no defendant, except defendant Cunningham, to this mode of procedure. There is no difficulty in making a full determination of all the questions in a single action. In such an action all matters of fact might properly be left to a jury, if a jury were insisted upon; and, even if a jury trial were denied, I am of the opinion that, theoretically, great injustice to the litigant is outweighed by the threatened vexatious litigation and expense attending a denial to plaintiff of standing in court in such an action.

The whole controversy grows out of a contract made by plaintiff in March, 1891, with defendants John and Charles Brown, to build a school building in the village of Waterford for $32,000. The contract is in writing. The contractors entered upon performance promptly, but before completion, and on November 15, 1891, abandoned the work, and without excuse, or pretense of excuse, refused to further perform; and defendant Cunningham, who was one of the sureties on the contractor's bond, and was also assignee for the contract from John and Charles Brown after the abandonment, completed the building after the manner prescribed by the contract. The contract stipulated for payments of ninety per cent. monthly as the work progressed. At the time of the abandonment by the Browns they had been paid in money, by plaintiff, $23,271.54. Extra work had been done, of value, over certain proper deductions, of $256.17; and after the above-named payments the plaintiff, at time of abandonment, had in hand, to pay for balance of work and material to complete the building, exactly $8,984.63. This was what plaintiff would have to have paid the Browns, had they gone on and completed the building. About this there is no dispute, and this was known to Cunningham when he took his assignment from the Browns of the contract, and when he first began work after Brown left. It is clear, I think, from the position taken by Cunningham from the beginning, that he never had other expectation than to be paid out of that balance in plaintiff's hands, and no sum in excess of it, however much the completion of the building might cost him. This, from his actions and his conversations, the plaintiff also had a right to understand. And the claim of counsel for this defendant, made at the close of the case, that the facts warrant a judgment upon a quantum meruit for the value of

labor and materials in completion of the building by Cunningham, and in excess of the sum in hand, and without regard to the contract, or to the payments actually made to the Browns, is untenable.

If Cunningham were the only party in interest here, obviously, all that would be necessary, in disposing of the case, would be the ascertainment of the sum in the hands of plaintiff, unpaid upon the contract, and directing the payment of such sum, with interest from the time when due, to him. But the interest of the other defendants, if any they have, is in the sum due the Browns at the time of abandonment, over and above the sums paid to them by plaintiff, and, the plaintiff not seeking to claim any forfeiture by reason of the abandonment, investigation was largely directed to the determination of this question, to wit, the actual value of the labor and materials furnished by the contractors, John and Charles Brown. The testimony is practically undisputed that the contract price, $32,000, was a fair and reasonable estimate of the cost of construction of the building in accordance with the terms of the contract. It may also be regarded as undisputed that the actual and necessary cost of finishing the building, after the Browns left it, was $10,941.09. Evidently, the only accurate test of value or cost of the unfinished building, at the time the contractors left it, is the contract price, less cost of completion. This test is eminently more satisfactory than any judgment of architects or builders as to value of work and materials furnished by the Browns prior to their departure. From this it appears beyond question that, instead of there being anything owing the Browns when they left, they had been largely overpaid, in money, by plaintiff, for all they had furnished and done. This proof also established that after Cunningham is paid there will be nothing in plaintiff's hands for the Browns, or any of the defendants claiming under them, or either of them, for this cost of completion, in the sum of $10,941.09, was wholly borne by Cunningham. It is contended, however, by the defendant the Richfield Bank, that plaintiff is estopped from denying that it owed to the Browns on November 15, 1891, in excess of the money already paid them, the further sum of $3,500, and this contention is based upon these facts, viz.: The written contract for the construction of this building possesses the following language: "The contractors shall and will well and sufficiently perform and finish, under the direction, and to the satisfaction, of said George C. Adams and W. P. Regan, architects, as aforesaid, (acting as agents of said owners,) all the work included in the specifications, * * * according to the true intent and meaning of said drawings and specifications, and of these presents. * * * In the event of any question arising respecting the true meaning of drawings or specifications, reference should be made to the architects, whose decision thereon, being just and impartial, shall be final and conclusive. * * * [The contract price, $32,000,] to be paid as follows: On or before the 10th day of each month, ninety per cent. of the work done and material furnished during the month previous; the full amount of work done and material so furnished to be ascertained by the estimate of the architect." The specifications provide that the work shall be done to the satisfaction of the architect "and building committee," and "any disagreement that cannot be settled by the architects or building committee shall be settled by three disinterested arbitrators."

It is the contention of counsel for the bank that the architects or architect were made, by this language, final arbitrators or umpires, and that their decision on any matter was final and conclusive, and that this is especially so as to monthly estimates of value of work done and material furnished during the progress of the work. Without doubt, the contractors, before they could demand monthly pay, were required to obtain, if practicable, the architects' estimate. Wyckoff v. Meyers, 44 N. Y. 145. But I think it is contemplated by the parties that in case either the contractors or building committee were dissatisfied the "disagreement shall be settled by arbitration," and this provision destroys the claim of conclusiveness to such estimates, in any event. It appears that on the 15th of November, 1891, the architect Regan made what purported to be an estimate of all the work done and material furnished up to that time from the beginning; that such estimate

was made under the supervision of John Brown, the contractor, and, in addition to showing the value of such work and materials to be $29,252.51, also showed the amount paid Brown, viz. $19,171.54, and, after deducting ten per cent., found a balance due of $7,155.72. This pretended estimate is all in the handwriting of one Carroll, clerk of the contractors, and has across its face the name of "W. P. Regan," signed by the architect. This estimate purports, on its face, to be "an approximate estimate for work done on Waterford school to date." When made, the paper was handed by the architect to John Brown, who took it on the same day, November 15th, to the chairman of the building committee, Mr. Ford, who immediately expressed dissatisfaction, and declared the estimate grossly excessive, and refused to pay more than $3,500 thereon. Such sum was paid to and received by Brown, and the paper left with Ford for the plaintiff. This seems to have been a settlement of this dispute without the intervention of arbitrators. It is shown upon the trial that this estimate was, as stated by the building committee to Brown, grossly excessive; that the error was so great as to characterize it as made in bad faith, and fraudulent; that, instead of the value of the work and material being $29,252.51, its value was not, in fact, over $21,058.91. After receiving the $3,500 on this estimate from the building committee, Brown returned to the architect Regan, and procured from him another paper, similar in all respects to the one left with the building committee, except, across its face, was written by Regan: "The above is approved by George C. Adams and W. P. Regan, architects. Per W. P. Regan, Lawrence, Mass." This was signed by Regan, at Brown's solicitation, after being told of the conclusion of the building committee, and of the refusa' to pay the full sum of $7,155.72, and so signed to enable said Brown to procure the money elsewhere, and not for the information of either the plaintiff, its building committee, or the contractors, or to enable the contractors to procure money from the plaintiff under the terms of the contract. It cannot be claimed, nor does the counsel for the bank claim, that such a purpose (the issuing of estimates to procure money elsewhere) was contemplated by the parties, in the language of the contract, or through any dealings between them thereunder. This second paper was taken by Brown to the defendant the Richfield Bank,—a long distance from Waterford,—on the 17th of November, 1891, after the contract had in fact been abandoned, and used with said bank as collateral security to a note, and a loan of $3,500 was procured from the bank thereon. The bank made no inquiry of any one but Brown; had no knowledge of the terms of the contract, or of the authority of the architect, or the reasons of refusal of payment by plaintiff. The plaintiff knew nothing of this transaction, and was ignorant of the acts and intentions of the architects and said Brown respecting the second paper. It is under this state of facts that the bank now claims that the plaintiff is estopped from denying that it owed this $3,500 to Brown on November 15, 1891.

In the hands of the contractors, it needs no argument to convince that this paper, purporting to be an estimate, would have been valueless as the basis of a claim against the plaintiff. The architects' estimate is not conclusive, under the terms of this contract, even when honestly made; and when it purports, simply, to be an "approximate" estimate, it does not profess to fix the exact amount; and when the "approximate" estimate is made in bad faith, evidenced by mistakes so gross as, in this case, to characterize the estimate as a fraudulent one, it is sufficient to destroy it, for any purpose, in the hands of the contractors. Kihlberg v. U. S., 97 U. S. 398; U. S. v. Robeson, 9 Pet. 319; Smith v. Briggs, 3 Denio, 73; McMahon v. Railroad Co., 20 N. Y. 464; Smith v. Brady, 17 N. Y. 174; Butler v. Tucker, 24 Wend. 447; Whiteman v. Mayor, etc., 21 Hun, 118. As an "award," the essential elements are lacking,—authorization, exactness, and honesty. In the hands of the defendant the Richfield Bank, it is difficult to see how this paper can have greater value than if possessed by the Browns, or how the principle of equitable estoppel can be invoked in its aid. When a person has made a deliberate statement with a view to induce another to act, he may not be at liberty to deny the statement so made; but it must be a statement to, or some neglect of duty to, the person led into that belief, or, what comes to the same thing, to the general public, of whom the person is one, before the

benefit of the doctrine of estoppel can be claimed. When the declaration or statement is not made to the person directly, it must have been made under such circumstances as to indicate that it was intended to reach third persons, or the community at large; and the person claiming the benefit of the principle must show that he has acted, in the transaction in which he was deceived, with ordinary caution. The plaintiff here made no statement to the bank directly, nor any statement to the general public. It did not clothe the architect with any authority to make any statement to any third person, or to the public at large. It is not contemplated by the contract, or by any previous dealings between plaintiff and the contractors, that the estimates should be put upon the market, or be used as negotiable paper or as security, or that they should be dealt with in any manner by the public, or by any member of it. These estimates were simply to be used as the measure of money to be handed out from the school-board treasury, monthly, to the contractors, on presentation, when the correctness of the estimate was not disputed. These estimates were never intended to influence the conduct of any outsider; and any such made and paid out by the aid of the architect was unauthorized, and not the act or declaration of the plaintiff. In Mechanics' Bank v. New York & N. H. R. R. Co., 13 N. Y. 600, certificates of railroad stock issued by the transfer agent of the company were held not to partake of the character of negotiable instruments, and must be taken subject to all equities existing against the assignor, and as to such the doctrine of estoppel in pais was not applicable. The same was held respecting a chose in action, not negotiable, in Bush v. Lathrop, 22 N. Y. 535. The same, in effect, is held in Bank of Batavia v. New York, L. E. & W. R. Co., 106 N. Y. 195, 12 N. E. Rep. 433. This was a delivery, by the agent of a common carrier, of a bill of lading. The court places great stress upon the fact that bills of lading, not stamped "Nonnegotiable," were declarations by the common carrier to the general public, and any person might safely rely upon the statements therein contained; that this was so understood by the common carrier, and by the consignor and by the business world. And it was because of this recognized element in bills of lading that the court held that the principle of estoppel applied when these fell into the hands of innocent parties. The reasoning of Selden, J., in Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 16 N. Y. 141, is to the same effect. Statements may be made by a party, which are not intended to influence the actions of others, or intended to be communicated to them, and in such case the doctrine does not apply. See Reeves v. Kimball, 40 N. Y. 311; Mayenborg v. Haynes, 50 N. Y. 675. Here it was held that a declaration of A. to B., not made for the purpose of being communicated to C., constitutes no estoppel, although C. hears of it, and acts upon it. To the same effect is Maguire v. Selden, 103 N. Y. 642, 8 N. E. Rep. 517. It was here held: "However understood, could not be extended beyond the party to the transaction in relation to which they were made." It is unnecessary to continue citations of cases in the courts. The bare statement of the facts is sufficient, when once the principle of estoppel, here invoked, is clearly understood. Without doubt the Bank of Richfield must stand in the shoes of its assignor of this chose of action, and hold the claim subject to all the defenses and equities which might be urged against the Browns. That the other defendants can have no claim against the plaintiff, since it was found that there was nothing due the Browns at the time of the abandonment of the contract, is too plain for argument. They possessed no legal or equitable claim upon this sum in the hand of the plaintiff, all of which was required to complete the building. They made no contract with plaintiff, and must be relegated to the persons with whom they dealt,— the contractors, John and Charles Brown.

The plaintiff contends that it should not be chargeable with interest or costs. The justice of this claim I do not fully see. Nor do I regard the nature of this action so far a presentation of equitable claims as to be addressed to the equity side of the court, wherein costs may be a matter of discretion; and, if it were, I see no propriety or justice in the retention of the money which should have been promptly paid for the completion of the building. The facts of this case do not press the court, with any considerable-

force, to the conclusion that plaintiff was justified in not paying over the money to Cunningham promptly, and in accordance with the terms of the -contract. This might have been done safely, and it was clearly plaintiff's -duty to have done it. In no respect is Cunningham at fault, and why he :should suffer this delay, and lose both interest and cost, after a long and ·expensive struggle, is not quite plain; and the justice of this claim of plaintiff does not gain weight upon reflection that really there has been nothing to struggle over. The whole claim of Cunningham has been conceded from the beginning, except the amount; and a proper resort to the contract and the architect at the time might have obviated any disagreement, and the .amount have been promptly determined through means in plaintiff's reach. The delay caused by plaintiff to the completion of the building was, in the light of this trial, wholly inexcusable. The plaintiff was called upon to -decide, and to act promptly. It had open to it two courses. It might declare the contract forfeited, and assume the completion itself, or it might recognize the contract as continuing, and accept the offices of the surety, or accept the :assignment as satisfactory, and recognize him. It did neither. Cunningham .acted only the part of a prudent man, spending so much time in seeking recognition, and seeking so to avoid the peril of doing his work for nothing. This delay must be charged to plaintiff, and, since it was sufficient to excuse the delay in completion of the building beyond April 1st, it must be sufficient to relieve from the stipulated forfeiture.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

C. C. Ormsby, (J. W. Houghton, of counsel,) for appellants.

James W. Verbeck, for appellants First Nat. Bank of Richfield, Williams & Manogue, and Henderson.

Smith & Wellington, (Edgar T. Brackett, of counsel,) for respondents.

HERRICK, J. From an examination of the evidence in this ·case, I am satisfied that there is evidence tending to establish the facts found by the trial court, and I do not feel that I would be justified in saying that such facts are not supported by the evidence in the case. The facts found by the court not being disturbed, the conclusions of law found naturally follow. The opinion of the trial court is, in the main, satisfactory, and I see no reason to write another.

Judgment should be affirmed, with costs. All concur.